STATE OF NEW MEXICO *v.* LANE, SECRETARY
OF THE INTERIOR, AND TALLMAN, COMMIS-
SIONER OF THE GENERAL LAND OFFICE.

IN EQUITY.

No. 20, Original.   Motion to dismiss.   Submitted January 8, 1917.—De-
cided March 6, 1917.

The State of New Mexico filed its bill in this court naming the Secre-
tary of the Interior and the Commissioner of the General Land
Office as the parties defendant and praying that a tract of land,
which the Interior Department had awarded and sold as coal land
to an entryman under the coal land law, be decreed the property of
the State by virtue of the school-land grant to the Territory of New
Mexico, and the State's succession thereto; that the entry proceed-
ings be decreed unlawful and that issuance of patent thereon be
enjoined. Questions concerning the construction of the laws men-
tioned, and questions of fact concerning the character of the land
and the knowledge of it, were involved.

*Held*, that the suit must be dismissed as, in substance, a suit against
the United States. *Louisiana* v. *Garfield*, 211 U. S. 70.

*Semble*, that the presence of the entryman as a party, he having pur-
chased the land and paid the price, would be indispensable to the
granting of the relief prayed.

This court has no original jurisdiction of a suit by a State against citi-
zens of other States [1] and citizens of the State complaining. Con-
stitution, Art. III, § 2; *California* v. *Southern Pacific Co.*, 157 U. S.
229.

---

[1] The bill avers that Mr. Lane is a citizen of California and Mr.
Tallman a citizen of Nevada, and the entryman, presumably, is a
citizen of New Mexico. See p. 58.

THE case is stated in the opinion.

*The Attorney General, The Solicitor General* and *Mr. S. W. Williams* for defendants, in support of the motion.

*Mr. Harvey M. Friend* for complainant, in opposition to the motion.

MR. JUSTICE McKENNA delivered the opinion of the court.

Bill for injunction, in which the State of New Mexico asserts title in fee simple to the S. W. ¼ of the N. E. ¼ of section 16, township 15 N., R. 18 W., New Mexico principal meridian, under the school-land grant of June 21, 1898, and prays to restrain the Interior Department from issuing a patent therefor to one Keepers.

The bill exhibits the grounds of suit as follows:

By § 1 of an act approved June 21, 1898, 30 Stat. 484, there were granted to the Territory of New Mexico sections 16 and 36 in every township in the State for the support of common schools. If such sections should be mineral, other lands were to be granted in lieu thereof, to be selected as provided in other sections of the act.

Section 6 of an act approved June 20, 1910, 36 Stat. 557, 561, which was an act to enable the people of New Mexico to form a constitution and state government and be admitted into the Union, granted, in addition to sections 16 and 36, sections 2 and 32 in every township in the proposed State not otherwise appropriated at the date of the passage of the act. This grant also was for the support of the common schools.

It was provided in § 10 that such lands and those theretofore granted were "expressly transferred and confirmed to the said State," and should "be by the said State held in trust," etc.

By § 12, except as modified or repealed by the act, all

grants of lands were ratified and confirmed to the State, subject to the provisions of the act.

On January 6, 1912, New Mexico was admitted to the Union on an equal footing with the other States and became and is the beneficiary of the school-land grant of June 21, 1898. Such grant had been held a grant *in præsenti* under which absolute title in fee to all sections 16 and 36 in the Territory which were at that date identified passed to the Territory at the date of the approval of the act, unless known to be mineral, and no certificate or patent was necessary to pass such title.

Township 15 N. of R. 18 W. was surveyed by the United States Government in 1881. The survey was approved by the Surveyor General of New Mexico November 30, 1881, and a township plat duly filed in the local land office and the land became subject to disposal July 21, 1882, which was many years prior to the grant of June 21, 1898.

Section 16 was not disposed of or otherwise reserved and therefore passed to the Territory by the grant of June 21, 1898, and the land described above was not at that time known to be mineral in character and was not then known coal land under the interpretation of the coal land law which had uniformly prevailed, in that at such date there had been no attempt on the part of any one to discover or develop coal upon it and no coal had been produced or extracted therefrom until 1911, 13 years after the title in fee had vested in the Territory.

The decision of the Department and of the Supreme Court (this court) was that land could not be held to be "known coal land" unless there had been a mine opened thereon and an actual production of coal in such quantity as to make the land more valuable on that account than for other purposes, and that such construction had become a rule of property and title vested under it could not be divested by a change of construction.

The construction was known to Congress when it passed the Act of June 21, 1898, was adopted by it when it enacted that act, and became the rule of construction for the future administration of the land, and the acceptance of the grant became an executed contract between the Territory and the United States to be construed and interpreted as then understood. Notwithstanding, the Commissioner of the General Land Office and the Secretary of the Interior have decided that a locator on the land whose claim was filed in 1911 is entitled to have a patent for the tract above described and they are about to issue a patent to him.

On May 12, 1911, one George A. Keepers filed in the local land office at Sante Fe, New Mexico, a coal declaratory statement under § 2348, Rev. Stats., for the land in controversy, and three days thereafter he applied to purchase the same as coal land under § 2347, Rev. Stats., and publication of notice thereof as provided by the mining laws and regulations of the Interior Department was duly had, beginning May 19, 1911, and ending June 16, 1911.

Within the period of publication protests were filed against the application, and the Territory of New Mexico intervened, claiming the land under the Act of June 21, 1898, on the ground that it was not coal land at the date of the grant. A hearing was allowed to determine the land's character.

It is conceded that the Commissioner of the General Land Office had the right and authority to determine the question whether the land was known coal land at the date of the grant of June 21, 1898. Nevertheless in such determination that official was restricted to ascertaining the single fact whether at the date of the grant a mine had been opened on the land or coal produced therefrom, and this was the sole question that he could investigate. But, notwithstanding, he undertook and directed a

hearing "to determine their true character" at the date of the hearing, which was in excess of his authority.

At the hearing by the local land office, testimony was taken largely addressed to the geological condition of the land and no testimony was adduced showing that any coal had ever been produced or extracted from the land prior to the date of the Act of June 21, 1898, or for many years thereafter and up until 1911. Nevertheless it was decided, upon developments made subsequently to that date and on other matters subsequently occurring, including the subsequent classification of the land as coal land by the Geological Survey in 1907, that the land contained coal at the date of the act and was for that reason known coal land at that date.

Upon appeal the ruling of the local officers was affirmed by the Commissioner and subsequently by the First Assistant Secretary of the Interior. There was no finding in his decision that the land was of known coal character at the date of the granting act and the only fact relied upon was that certain "disclosures" *now*, not *then*, indicated that the Black Diamond coal bed underlay a portion of the tract, which even if known would not under the law as then construed and interpreted have rendered the land known coal land. The decision, therefore, was purely arbitrary.

The State duly filed a motion for re-hearing, which was denied, and the decision promulgated and the local officers directed to issue a final certificate to Keepers.

The bill avers "that when said final certificate shall be issued, as it undoubtedly has been, and upon its receipt at the General Land Office, the officials thereof, following the regulations of the Interior Department in such cases made and provided, will at once proceed to issue a patent to said Keepers for said S. W. ¼ of the N. E. ¼ of said section 16, unless restrained by this honorable court in the meantime, which said tract is owned by and belongs

to your orator as a part of its school-land grant which was vested immediately in fee in the Territory of New Mexico, at the date of said school-land grant of June 21, 1898, to which right and title your orator has succeeded, as aforesaid, and such patent, if issued to said Keepers, will be a cloud upon the title of your orator to said tract, being an attempt, unlawfully, to deprive your orator of its title in fee simple thereto."

It is prayed that the Secretary of the Interior and the Commissioner of the General Land Office be subpœnæd to appear and answer the bill, but not under oath; that it be decreed that the title immediately vested in the Territory of New Mexico at the date of the Act of June 21, 1898, and has become vested in the State as the successor of the Territory; that the Secretary and Commissioner have not had since the date of the act or now have authority to interfere with the State's title and that they be enjoined from executing their orders and decision. General relief is also prayed.

A motion to dismiss the bill is made on the grounds: (1) The United States is a necessary party because it appears the title to the land involved is in the United States, and that it is the purpose of the defendants to dispose of the land in accordance with the provisions of the mineral land laws of the United States, and that if the defendants be enjoined from executing such purpose the United States would be deprived of the purchase price of the land. (2) It appears from the bill that the State has no title or interest in the land because it was known coal land at the date of the passage of the Act of June 21, 1898, and was not intended to be granted nor granted to the Territory of New Mexico by that act nor any subsequent act. (3) That complete inquiry was made by the officers of the Land Department and they found the fact to be that at the date of the act the land was known to be valuable for mineral purposes. (4) It

appears that one. Keepers had purchased the land and therefore was an indispensable party. (5) The bill is in other respects uncertain, informal and insufficient and does not state facts sufficient to entitle the State to any relief.

The motion should be granted on the ground that the suit is one against the United States, under the authority of *Louisiana* v. *Garfield*, 211 U. S. 70. In that case a bill was brought in this court to establish the title of the State of Louisiana to certain swamp lands which it claimed under the statutes of the United States and to enjoin the Secretary of the Interior and other officers of the Land Department from carrying out an order making different disposition of the land.

Under the statute it was contended the land vested in the State in fee simple, that is, the act was contended to have the same character and efficacy as the Act of June 21, 1898, is asserted to have in the case at bar. And certain facts were necessary to be determined as elements of decision. This court said that in the case there were questions of law and of fact upon which the United States would have to be heard. So in the present case there is a question of law whether the Act of June 21, 1898, had the quality as a grant of the land asserted of it, whether of itself or because of its terms or their prior construction and its adoption, indeed, whether there was such a prior construction or its adoption, and again of the fact of the character of the land at the time of the grant and the evidence of it and the knowledge of it.

It would seem, besides, that under the averments of the bill Keepers is an indispensable party, he having become, according to the bill, a purchaser of the land and paid the purchase price thereof. To make him a party would oust this court of jurisdiction, if he is a citizen of New Mexico, and the presumption expressed by defendants that he is, complainant does not deny. *California* v. *Southern Pacific Co.*, 157 U. S. 229.                    *Dismissed.*