**BLAKE CONSTRUCTION CO., Inc.,**
**Appellant,**

v.

**AMERICAN VOCATIONAL ASSOCIA-**
**TION, INC. and Riggs National**
**Bank, Appellees.**

**No. 22001.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 26, 1969.

Decided June 30, 1969.

Mr. Marshall E. Miller, Washington, D. C., for appellant.

Mr. Edward Brown Williams, Washington, D. C., with whom Mr. Jan Edward Williams, Washington, D. C., was on the brief, for appellee, American Vocational Ass'n, Inc.

Mr. Stephen S. Boynton, Washington, D. C., with whom Messrs. John P. Arness and Peter F. Rousselot, Washington, D. C., were on the brief, for appellee, Riggs Nat. Bank.

Before BURGER, WRIGHT and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Appellant Blake Construction Co., Inc. (Blake), filed a complaint in the District Court against appellees, American Vocational Association, Inc. (AVA) and Riggs National Bank (Riggs), seeking declara-

tory relief and a judgment impressing a trust in Blake's favor on funds paid to appellees by the General Services Administration (GSA).[1] The court granted appellees' motions to dismiss the action, and directed the entry of final judgment in their favor.[2] This appeal questions the propriety of that disposition, and to test it we look first to the facts alleged in Blake's complaint.[3]

In 1964, Blake entered into a contract with the United States, acting through GSA, for the construction of two buildings in the District of Columbia, and then subcontracted the excavating and underpinning operations to two other companies.[4] During the course of excavating, AVA complained that defects were developing in its building, which was located on land adjacent to the construction site. GSA investigated and found extensive damage to AVA's building and to an adjoining building owned by Riggs. GSA concluded that the damage resulted from improper performance of the construction contract and gave notice to that effect to Blake. So great was the damage to AVA's building that it had to be razed, and the common wall between it and Riggs' building had to be replaced.

After lengthy negotiations, GSA reached agreements with AVA and Riggs to settle their damage claims for $485,539.89 and $71,687.65, respectively. GSA paid these sums and withheld the aggregate as an offset against payments otherwise due Blake under the construction contract. Blake has long challenged GSA's authority to unilaterally settle and set off these claims, arguing that AVA and Riggs could not legally have asserted them against either GSA or Blake.

Blake then brought its action against AVA and Riggs, omitting both GSA and the United States as parties. As to AVA and Riggs, the complaint sought a declaratory judgment determining the rights and liabilities of the parties, and the imposition of a trust on the settlement funds. AVA and Riggs moved to dismiss on grounds incorporating contentions that the complaint failed to state a claim upon which relief could be granted, and that the United States was an indispensable but non-consenting party. The District Court granted the motions and dismissed the action as to AVA and Riggs.

As it alleged in its complaint, Blake contends that GSA made the payments to AVA and Riggs in consequence of two serious mistakes as to conditions fundamental to the settlement. There was a mistake of fact, it is urged, because GSA misconceived Blake's responsibility for the damage AVA and Riggs suffered to their buildings. There was a mistake of law, Blake continues, because GSA incorrectly concluded that it had legal authority to effect the settlements in question. On these premises, Blake asserts that but for the mistakes the monies remitted in settlement should have been paid to it, and that AVA and Riggs would be unjustly enriched if permitted to retain them. To avoid that consequence,

---

1. Blake also joined as defendants the two subcontractors mentioned in the text *infra* at note 4, against whom a money judgment was sought. These two parties are not involved in this appeal.

2. With this direction, and the court's express determination that there was no just cause for delay, see Fed.R.Civ.P. 54(b), so much of the litigation became immediately appealable. See Redding & Co. v. Russwine Const. Corp., 135 U.S. App.D.C. 153, 417 F.2d 721 (D.C. Cir. March 21, 1969).

3. Continental Distilling Corp. v. Humphrey, 95 U.S.App.D.C. 104, 108, 220 F.

2d 367, 371 (1954); National Used Car Market Report, Inc. v. National Auto. Dealers Ass'n, 91 U.S.App.D.C. 313–314, 200 F.2d 359–360 (1952); Callaway v. Hamilton Nat'l Bank, 90 U.S. App.D.C. 228, 231, 195 F.2d 556, 559 (1952); Machado v. McGrath, 90 U.S.App.D.C. 70, 73, 193 F.2d 706, 708, cert. denied 342 U.S. 948, 72 S.Ct. 557, 96 L.Ed. 705 (1952). See also Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Gibbs v. Buck, 307 U.S. 66, 76, 59 S.Ct. 725, 83 L.Ed. 1111 (1939).

4. See note 1, *supra*.

Blake argues, a trust in the funds should have been decreed in its favor.

■ It is well settled that a constructive trust may arise whenever a party has obtained property which does not belong to him, and which he cannot in good conscience withhold from another who is beneficially entitled to it.[5] This flexible principle of equity[6] has frequently been utilized where a transfer of the property was induced by mistake of fact,[7] and on a smaller scale where the mistake was one of law.[8] In situations of both sorts, courts have exercised their equitable powers to treat the transferee as a constructive trustee for him to whom the property rightfully belongs.[9]

■ These salutary principles, however, avail Blake nothing. The monies GSA paid to AVA and Riggs came, not from Blake, but from the United States. If, as Blake charges, GSA made the payments without lawful authority to do so, or under a misapprehension as to Blake's responsibility for the property damage, the United States, and not Blake, would be entitled to restitution.[10] By the same token, AVA and Riggs would be constructive trustees, not for Blake, but rather for the United States.[11] Blake's entitlement to payment for its work was wholly a product of its contract with the United States, and the mere fact, if indeed the fact, that AVA and Riggs had no legitimate claim to the monies would not mean that Blake thereby acquired a right to the specific funds, as distinguished from its contract right to recover its just due from the United States through the processes prescribed for that purpose.[12]

■ Thus it is no more apparent to us than it seems to have been to the District Court as to how a valid claim to relief could be extracted from Blake's complaint. And in our view of the matter, the problem was not simply whether Blake had alleged circumstances giving rise to a trust in its favor but whether it could sue to establish any trust in the settlement funds at all. The United States, as a sovereign entity, cannot be sued without its consent,[13] and the inquiry essential in that connection is not exhausted at the point at which it is

---

5. See G. Bogert, Trusts and Trustees §§ 471–472 (2d ed.1960) ; 5 A. Scott, Trusts § 462 (3d ed.1967).

6. See Osin v. Johnson, 100 U.S.App.D.C. 230, 233, 243 F.2d 653, 656 (1957) ; Harrington v. Emmerman, 88 U.S.App.D.C. 23, 27, 186 F.2d 757, 761 (1950) ; Cahill v. Bryan, 87 U.S.App.D.C. 271, 272–273, 184 F.2d 277, 278–279 (1950) ; Mandley v. Backer, 73 App.D.C. 412, 413, 121 F. 2d 875, 876 (1941).

7. Knight Newspapers v. C.I.R., 143 F.2d 1007, 1011 (6th Cir. 1944) ; Fitch v. State, 138 Conn. 534, 86 A.2d 718, 719–720 (1952) ; Sebastian v. Stamer, 340 Ill.App. 218, 90 N.E.2d 922 (1950). See also 5 A. Scott, Trusts §§ 465–473 (3d ed.1967).

8. Doing v. Riley, 176 F.2d 449, 458 (5th Cir. 1949) ; White v. White, 346 Mass. 76, 190 N.E.2d 102 (1963).

9. See the cases cited *supra* notes 6–8.

10. In re Berry, 147 F.2d 208–211 (2d Cir. 1906); Grand Trunk West. R.R. v. Chicago & W. I. R.R., 131 F.2d 215, 217–219 (7th Cir. 1942); Knoblock v. Waale-Camplan Co., 141 Cal.App.2d 870, 297 P.

2d 765, 768 (1956) ; Cohon v. Oscar L. Paris Co., 17 Ill.App.2d 21, 149 N.E.2d 472, 476 (1958) ; McCreary v. Shields, 333 Mich. 290, 52 N.W.2d 853, 855 (1952) ; In re Bangor Trust Co., 317 Pa. 495, 178 A. 290 (1935). See also G. Bogert, Trusts and Trustees § 474 (2d ed. 1960) ; 5 A. Scott, Trusts § 465 (3d ed. 1967).

11. See the cases cited *supra* note 10.

12. See note 26, infra, and accompanying text.

13. E. g., Dugan v. Rank, 372 U.S. 609, 617–619, 620–623, 83 S.Ct. 999, 10 L.Ed. 2d 15 (1963) ; Malone v. Bowdoin, 369 U.S. 643, 647–648, 82 S.Ct. 980, 8 L.Ed. 2d 168 (1962) ; Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949) ; Mine Safety Appliances Co. v. Forrestal, 326 U.S. 371, 66 S.Ct. 219, 90 L.Ed. 140 (1945) ; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) ; Wells v. Roper, 246 U.S. 335, 337–338, 38 S.Ct. 317, 62 L.Ed. 755 (1918). See also City of Fresno v. California, 372 U.S. 627, 629, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963).

found that the United States is not named as a party to the litigation.[14] Rather, the suit is one against the United States if "the judgment would expend itself on the public treasury or domain, or interfere with the public administration. * * *"[15] Perhaps one of the clearest facets of the doctrine of sovereign immunity is that "[a] proceeding against property in which the United States has an interest is a suit against the United States,"[16] and we think it matters not that its interest is equitable rather than legal in nature.[17]

So it is that in pressing its trust theory Blake was confronted with a dilemma from which we see no avenue of escape. If, on the one hand, the theory was substantively erroneous, so much of the complaint was properly dismissed for failure to state a claim upon which relief could be granted. If, on the other hand, the theory was valid, no action could be maintained by Blake to erect a trust in the settlement funds. As payor of the funds—theoretically under a vitiating mistake of law and fact—the United States would be equitably entitled to their return. That equitable interest, in turn, would immunize the funds against the very kind of encroachment Blake's lawsuit envisioned. For Blake's effort, if successful, would impinge upon the public operations of a governmental agency,[18] disrupt the congressional scheme for the collection of debts against the United States,[19] and alter the beneficial ownership of the funds GSA paid over in

14. Larson v. Domestic & Foreign Corp., *supra* note 13, 337 U.S. at 687, 69 S.Ct. 1457; Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Atlantic Meat Co. v. Reconstruction Finance Corp., 166 F.2d 51, 56 (1st Cir. 1948). See also Wells v. Roper, *supra* note 13, 246 U.S. at 337, 38 S.Ct. 317; Kennedy v. Rabinowitz, 115 U.S.App.D.C. 210, 212, 318 F.2d 181, 183 (1963), aff'd 376 U.S. 605, 84 S.Ct. 919, 11 L.Ed.2d 940 (1964).

15. Land v. Dollar, *supra* note 14, 330 U.S. at 738, 67 S.Ct. 1009. See also Dugan v. Rank, *supra* note 13, 372 U.S. at 621, 83 S.Ct. 999.

16. State of Minnesota v. United States, 305 U.S. 382, 386, 59 S.Ct. 292, 83 L. Ed. 235 (1939). See also Maricopa County v. Valley Nat'l Bank, 318 U.S. 357, 362, 63 S.Ct. 587, 87 L.Ed. 834 (1943); United States v. Alabama, 313 U.S. 274, 282, 61 S.Ct. 1011, 85 L.Ed. 1327 (1941). Other cases outlawing suits seeking to affect property in which the United States has an interest include Hawaii v. Gordon, 373 U.S. 57, 58, 83 S. Ct. 1052, 10 L.Ed.2d 191 (1963); United States v. Brosnan, 363 U.S. 237, 243, 246, 251, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960); Leiter Minerals, Inc. v. United States, 352 U.S. 220, 226–227, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); Morrison v. Work, 266 U.S. 481, 486, 45 S.Ct. 149, 69 L.Ed. 394 (1925); New Mexico v. Lane, 243 U.S. 52, 58, 37 S.Ct. 348, 61 L.Ed. 588 (1917); Goldberg v. Daniels, 231 U.S. 218, 221–222, 34 S.Ct. 84, 58 L.Ed. 191 (1913); Louisiana v. Garfield, 211 U.S. 70, 77–78, 29 S.Ct. 31, 53 L.Ed. 92 (1908); Naganab v. Hitchcock, 202 U.S. 473, 476, 26 S.Ct. 667, 50 L.Ed. 1113 (1906); Oregon v. Hitchcock, 202 U.S. 60, 69, 26 S.Ct. 568, 50 L.Ed. 935 (1906). See also United States v. John Hancock Mut. Life Ins. Co., 364 U.S. 301, 303, 305, 306, 81 S.Ct. 1, 5 L.Ed.2d 1 (1960).

17. Even a junior lien in favor of the United States would, but for countervailing statutes, bring the immunity doctrine into play. See United States v. Brosnan and United States v. John Hancock Mut. Life Ins. Co., *supra* note 16. And see Charles H. Tompkins Co. v. Brucker, 104 U.S. App.D.C. 383, 384, 262 F.2d 694, 695 (1958); Mine Safety Appliances Co. v. Forrestal, *supra* note 13, 326 U.S. at 374–375, 66 S.Ct. 219.

18. Hawaii v. Gordon, *supra* note 16, 373 U.S. at 58, 83 S.Ct. 1052; Dugan v. Rank, *supra* note 13, 372 U.S. at 620, 621, 83 S.Ct. 999; Morrison v. Work, *supra* note 16, 266 U.S. at 485–486, 45 S.Ct. 149.

19. See note 26, *infra*, and accompanying text. Compare Malone v. Bowdoin, *supra* note 13, 369 U.S. at 647 n. 8, 82 S.Ct. 980. See also Larson v. Domestic & Foreign Corp., *supra* note 13, 337 U.S. at 697 n. 17, 18, 69 S.Ct. 1457; Mine Safety Appliances Co. v. Forrestal, *supra* note 13, 326 U.S. at 375, 66 S.Ct. 219 (concurring view).

its behalf.[20]   At the very least, the presence of the United States in the litigation was essential to any undertaking to so vitally affect its interests.[21]   We hold that Blake's bid for a constructive trust in the settlement funds was an action against the United States, to which the United States was an indispensable party,[22] and in which the United States had not consented to be sued.   In sum, the United States "cannot be interfered with behind its back." [23]

We conclude similarly as to Blake's complaint in its other aspect—its request for a judgment declaratory of the rights and liabilities of the parties.   The declarations sought, particularized in the complaint, were that Blake and GSA were not liable to AVA and Riggs; that GSA had no right to make the payments to AVA and Riggs; that the latter had no right to retain them; and that the monies paid should be impressed with a trust in Blake's favor.   Quite obviously, the prayer for declaratory relief covered

essentially the same ground as did the prayer for the establishment of a trust, and was equally infirm as a prohibited suit against the United States.[24]   Moreover, a full and just determination of the rights and responsibilities of the parties was patently impossible without the presence of the United States as a party.[25]

■ Blake has available its remedy by suit in the Court of Claims for vindication of its contractual rights against the United States.[26]   There it may litigate against the United States the validity of the proposed withholding, from payments accruing under the contract, of the amounts paid in settlement.[27]   We see no way it can do so, either directly or indirectly, in the action it brought in the District Court.[28]

The judgment appealed from is

Affirmed.

Circuit Judge BURGER did not participate in the foregoing opinion.

20. Compare Larson v. Domestic & Foreign Corp., *supra* note 13, 337 U.S. at 691 n. 11, 69 S.Ct. 1457, quoting North Carolina v. Temple, 134 U.S. 22, 30, 10 S.Ct. 509, 331 L.Ed. 849 (1890).   See also Hawaii v. Gordon, *supra* note 16, 373 U.S. at 58, 83 S.Ct. 1052.

21. Compare Louisiana v. Garfield, *supra* note 16, 211 U.S. at 77–78, 29 S.Ct. 31.

22. United States v. Brosnan, *supra* note 16, 363 U.S. at 243, 246, 251, 80 S.Ct. 1108;   Leiter Minerals, Inc. v. United States, *supra* note 16, 352 U.S. at 226–227, 77 S.Ct. 287;   United States v. Alabama, *supra* note 16, 313 U.S. at 282, 61 S.Ct. 1011;   Minnesota v. United States, *supra* note 16, 305 U.S. at 386–387, 59 S.Ct. 292;   Morrison v. Work, *supra* note 16, 266 U.S. at 486, 45 S.Ct. 149;   New Mexico v. Lane, *supra* note 16, 243 U.S. at 58, 37 S.Ct. 348;   Goldberg v. Daniels, *supra* note 16, 231 U.S. at 221–222, 34 S.Ct. 84;   Louisiana v. Garfield, *supra* note 16, 211 U.S. at 77–78, 29 S.Ct. 31.

23. Goldberg v. Daniels, *supra* note 16, 231 U.S. at 222, 34 S.Ct. at 84.

24. Compare Larson v. Domestic & Foreign Commerce Corp., *supra* note 13, 337 U.S. at 689 n. 9, 69 S.Ct. 1457;   Charles H. Tompkins Co. v. Brucker, *supra* note 17, 104 U.S.App.D.C. at 384, 262 F.2d at 695;   Ogden River Water Users' Ass'n v. Weber Basin Water Conservancy, 238 F.2d 936, 941–942 (10th Cir. 1956).

25. Compare Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 242–244, 73 S.Ct. 236, 97 L.Ed. 291 (1952);   Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948).

26. 28 U.S.C. § 1491 (1964).

27. See 28 U.S.C. § 1503 (1964).

28. We have noted that Blake unsuccessfully moved the District Court for leave to amend its complaint.   We find no error, however, in the court's denial of this request since the proposed amendments would not have eliminated the legal obstacles to maintenance of its suit.