Benno BENIMA

v.

SMITHSONIAN INSTITUTION et al.

Civ. A. No. 76–231–F.

United States District Court,
D. Massachusetts.

Jan. 16, 1979.

Elizabeth Rodgers, Clyde Bergstresser, Boston, Mass., for plaintiff.

Bruce Singal, Asst. U. S. Atty., Boston, Mass., for defendants.

## MEMORANDUM

FREEDMAN, District Judge.

By Memorandum and Order dated August 15, 1978 this Court granted, in part, the defendants' alternative motions to dismiss or for summary judgment. At the same time, the Court ordered supplemental briefing on some of the issues raised by the motion. Those briefs have now been filed. Plaintiff's supplemental brief evidences some confusion over the precise meaning of the Court's August 15, 1978 Memorandum and Order and raises some new arguments relating to issues already discussed by the Court but worthy of re-examination. In the interest of clarity, and in fairness to the parties, I therefore revoke my August 15, 1978 Memorandum and Order. While much of the substance of my analysis remains intact, I choose to write on a clean slate.

This is an action for discrimination on the basis of age and alienage. The plaintiff seeks back pay, reinstatement and damages. The defendants are the United States of America, the Smithsonian Institution (the "Smithsonian"), and Harris Rosenthal, the personnel manager of the Smithsonian Astrophysical Observatory (the "SAO"), a division of the Smithsonian.

The plaintiff alleges that he was employed by the SAO from September 11, 1961 until his discriminatory discharge on November 18, 1972 by defendant Rosenthal, acting "as an agent and servant of the SAO." Plaintiff's position with the SAO was that of scientific programmer in the Data Processing Department. He received the highest salary and held the most seniority for that position within the department. During his tenure at the SAO, plaintiff was a Dutch national of Jewish descent. Despite the fact that since his discharge plaintiff has actively sought re-employment with the SAO, the defendants have continually, and as recently as July of 1975, refused to re-employ plaintiff.

The complaint was filed on January 19, 1976 and was later amended to reflect that plaintiff filed a complaint with the Massachusetts Commission of Labor and Industries on June 4, 1976, that on June 14, 1976 plaintiff notified the United States Secretary of Labor (the "Secretary") of his intent to sue, and that on June 16, 1976 plaintiff notified the United States Civil Service Commission of his intent to sue. The amended complaint contains no allegation of plaintiff's age. Plaintiff contends that the action arises under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 et seq.; the Fifth Amendment to the Constitution and the Civil Rights Act, specifically 42 U.S.C. § 1981 ("Section 1981"). The defendants argue that plaintiff's discharge is not actionable under the ADEA, the Fifth Amendment or Section 1981, and, if it is, there are no genuine issues of material fact and the defendants are therefore entitled to judgment as a matter of law.

### The ADEA Claim

The ADEA prohibits, inter alia, an "employer" from discharging "any individual . . . because of such individual's age." 29 U.S.C. § 623(a). The term "employer", however, "does not include the United States, or a corporation wholly owned by the Government of the United States." 29 U.S.C. § 630(b). Persons in the employ of the federal government received ADEA protection on May 1, 1974 when 29 U.S.C. § 633a became effective. That section requires that federal personnel actions "be made free from any discrimination based on

age." 29 U.S.C. § 633a(a). The defendants contend that the Smithsonian, as an "executive agency" of the United States was not subject to the proscriptions of the ADEA on November 18, 1972, the date of plaintiff's dismissal. The plaintiff counters that since he was a private-roll, "non-federal" employee of the Smithsonian whose salary was paid from private trust funds, the Smithsonian, with respect to him, was a private employer, subject to the ADEA.

Were it necessary to decide whether the ADEA applied to the Smithsonian on November 18, 1972, I would be inclined to agree with the defendants that it did not.[1] But I need not decide that question, for even if the ADEA were applicable, plaintiff's claim would be barred by his failure to timely comply with the procedural conditions precedent to suit contained in 29 U.S.C. §§ 626(d), 633(b) ("Section 626(d)" and "Section 633(b)"). *See, e. g., Reich v. Dow Badische Company,* 575 F.2d 363 (2d Cir. 1978).

To begin with, in the so-called "deferral states" a prospective ADEA plaintiff must comply with Section 633(b) by initiating proceedings before the appropriate state agency prior to commencing a federal court action. The prospective plaintiff must then wait until the state proceedings are terminated or the expiration of sixty (60) days, whichever is earlier, before commencing suit under 29 U.S.C. § 626. *See Reich v. Dow Badische Company, supra; Hadfield v. Mitre Corp.,* 562 F.2d 84 (1st Cir. 1977), on remand, Civil Action No. 74–

2946–S (D.Mass. October 24, 1978). Massachusetts is a deferral state, *id.,* and the original complaint in the case at bar was filed some four and one-half months prior to the alleged initiation of state proceedings.

Section 626(d) imposes additional procedural conditions precedent to suit. It requires that a prospective plaintiff notify the Secretary of his intent to sue at least sixty (60) days prior to commencing an action under the ADEA. Notice in the instant case was given nearly five months *after* the filing of the original complaint. Moreover, in "deferral states" notice to the Secretary must be filed within the earlier of three hundred (300) days after the occurrence of the allegedly unlawful act or thirty (30) days after receipt of notice of termination of the state proceedings. 29 U.S.C. § 626(d)(2). Plaintiff was terminated on November 18, 1972, almost four years prior to the stated date of his filing notice with the Secretary.

Plaintiff's allegation that defendants continually refused to rehire him does not cure his failure to comply with the ADEA notice requirements. While the presence of a continuing contractual duty to rehire may, in some instances justify the finding of a continuing violation, *see Hiscott v. General Electric Company,* 521 F.2d 632 (6th Cir. 1975), no such contractual duty is indicated here. Even if such a duty were present, plaintiff's failure to initiate state proceedings under Section 633(b) and file

---

1. In *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 184 U.S. App.D.C. 397, 566 F.2d 289 at 295, (1977) (en banc), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978), (reinstating portion of panel opinion dealing with the Smithsonian Institution) (hereinafter *"Expeditions Unlimited"*), the Court of Appeals for the District of Columbia Circuit discussed the peculiar nature of the Smithsonian in the context of a Federal Tort Claims Act suit for libel. The *Expeditions Unlimited* court stated:

    In finding immunity under the Act, the initial step is to determine whether the defendant organization is a "federal agency" within the definition set forth in the statute. Although the Smithsonian has a substantial pri-

vate dimension, we conclude that the nature of its function as a national museum and center of scholarship, coupled with the substantial governmental role in funding and oversight, make the institution an "independent establishment of the United States," within the "federal agency" definition.

*Id.* 184 U.S.App.D.C. at 404, 566 F.2d at 296 (footnotes omitted). I believe that similar analysis compels a conclusion that the ADEA did not apply to the Smithsonian at the time of plaintiff's dismissal. I note that the fact that plaintiff was a private-roll employee of the Smithsonian does not alter this conclusion since ADEA applicability is defined in terms of the "employer" and not the employee himself. See 29 U.S.C. §§ 623(a), 630(b).

notice with the Secretary prior to commencing suit as required by Section 626(d) would serve to bar his ADEA claim. *E. g., Brohl v. Singer Company,* 407 F.Supp. 936 (M.D. Fla.1976).

■ Plaintiff's final argument in support of his ADEA claim is that the Section 626 three-hundred-day time period was tolled "by the actions of the defendant which dissuaded plaintiff from seeking legal counsel." While I find this argument insufficient to overcome plaintiff's failure to comply with the prerequisites of initiation of state proceedings and notice to the Secretary, the argument may be rejected for other reasons. First, the amended complaint contains no allegation indicating the existence of facts supporting tolling. Second, an examination of plaintiff's own affidavit reveals that on June 15, 1975 "it was abundantly clear [to him] that the SAO was not going to rehire" him. Even assuming the Section 626(d) time period to have been tolled until June 15, 1975, the June 14, 1976 filing of notice with the Secretary was beyond the permissible three-hundred-day period.

*The Fifth Amendment Claim*

The plaintiff contends that his dismissal was in violation of the Fifth Amendment. *Cf. Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) (Civil Service Commission regulation barring noncitizens from federal civil service violates Due Process Clause of Fifth Amendment). The defendants argue, however, that they are immune from suit.

■ I have no hesitancy in dismissing plaintiff's Fifth Amendment claim against the United States itself on the grounds of sovereign immunity. Absent waiver of the immunity or consent by Congress, an action may not be maintained against the United States. *E. g., United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Massachusetts v. United States Veterans Administration,* 541 F.2d 119 at 123

(1976).[2] Since no consent to this suit or waiver of sovereign immunity has been called to the attention of the Court, plaintiff's Fifth Amendment claim against the United States cannot stand.

■ The Smithsonian is, I believe, also immune. Generally, "[w]hen Congress authorizes one of its agencies to be sued *eo nomine,* it does so in explicit language, or impliedly because the agency is the offspring of such a suable entity." *Blackmar v. Guerre,* 342 U.S. 512 at 515, 72 S.Ct. 410 at 412, 96 L.Ed. 534 (1952), *citing Keifer & Keifer v. Reconstruction Finance Corp.,* 306 U.S. 381 at 390, 59 S.Ct. 516, 83 L.Ed. 784 (1930). While the Smithsonian has been before the courts as a plaintiff, *see Keifer & Keifer v. Reconstruction Finance Corp., supra* at 391–392, 59 S.Ct. 516, there exists no express statutory authorization for its participation in litigation. Moreover, I find no implied Congressional intent to subject the Smithsonian to suit. *See Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 184 U.S.App.D.C. 397, at 407 n. 22, 566 F.2d 289, at 299 n. 22 (1977) (en banc), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978) (reinstating portion of panel opinion dealing with Smithsonian). *But cf., id.,* 184 U.S. App.D.C. at 406 n. 18, 566 F.2d at 298 n. 18. ("Nor would the statement that corporate status alone is not a basis for suit, be in conflict with a conclusion that the Smithsonian may have no operative immunity arising from common law, in light of its corporate status *and* its unique mix of private and governmental operations, funding, and management.") (emphasis in original).

I reject plaintiff's argument that the Smithsonian's sovereign immunity does not extend to the instant action because plaintiff was a "private-roll" employee of the Smithsonian. According to plaintiff, "[a]n award of money damages would be derived from private trust or private donations and would not require U.S. government fund-

---

**2.** The Fifth Amendment has no effect upon the sovereign's immunity from suits, except in cases tied to the Just Compensation Clause of

that amendment. *See United States v. Testan,* 424 U.S. 392 at 401–402, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

ing. Thus, Benima's suit . . . is in reality not a suit against the United States." The premise that any award in this case would be derived solely from "private" trust funds is by no means a certainty. Moreover, even if it were certain, there is authority supporting the proposition, to which I adhere, that even the funds donated to and administered by the Smithsonian bear the characteristics of funds reserved for public use. *Cf. Story v. Snyder,* 87 U.S.App.D.C. 96 at 99, 184 F.2d 454 at 457, *cert. denied,* 340 U.S. 866, 71 S.Ct. 88, 95 L.Ed. 632 (1950) (affirming dismissal of suit against Library of Congress Trust Fund Board).[3]

Similarly, plaintiff's Fifth Amendment claim against defendant Rosenthal must be dismissed. Plaintiff alleges that Rosenthal was "acting as an agent and servant" of the Smithsonian. The shield of sovereign immunity extends to an individual defendant "who is sued expressly as an agent of the United States." *Harris v. United States,* 204 F.Supp. 228 at 230 (D.Mass.1962). Moreover, I expressly hold that this case, with respect to all forms of relief sought, falls with the general rule regarding suits against individual officers of the United States, to wit:

. . . A suit against an officer of the United States is one against the United States itself "if the decree would operate against" the sovereign; *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 1053, 10 L.Ed.2d 191 (1963); or if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration", *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act", *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 704, 69

S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949). *See Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963).

*Gnotta v. United States,* 415 F.2d 1271 at 1277 (8th Cir. 1969), *cert. denied,* 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). I note that the two exceptions to the general rule, "(1) action[s] by officers beyond their statutory powers, and (2) . . . the powers themselves or the manner in which they are exercised are constitutionally void," *Dugan v. Rank,* 372 U.S. 609 at 621–622, 83 S.Ct. 999 at 1007, 10 L.Ed.2d 15 (1963), are inapposite. First, there is no allegation here that Rosenthal exceeded his statutory authority. *See Larson v. Domestic & Foreign Corp.,* 337 U.S. 682 at 689–690, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In fact, Rosenthal's affidavit demonstrates that he played no role in the actual decision to terminate the plaintiff. Second, while the complaint does allege a constitutional violation, it appears that Rosenthal played no part in that violation but merely processed the decision to terminate plaintiff by notifying him of the decision according to established procedure.

Even, however, if I were to hold that Rosenthal is not protected by the shield of sovereign immunity, I would dismiss plaintiff's Fifth Amendment claim against him. First, plaintiff's allegations regarding Rosenthal's conduct are too general and conclusory to support a claim of this nature. *Cf. Kadar Corp. v. Milbury,* 549 F.2d 230 (1st Cir. 1977). Second, Rosenthal's uncontroverted affidavit reveals that he was not involved in the decision to terminate plaintiff. This alone would support summary judgment in favor of Rosenthal. *See Hahn v. Sargent,* 523 F.2d 461 at 467 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976). Third, the existence of a direct "Bivens-type" cause of action under the Fifth Amendment is un-

---

**3.** *See Blake Construction Co. v. American Vocational Association, Inc.,* 136 U.S.App.D.C. 6, 419 F.2d 308 (1969), wherein the court said: "Perhaps one of the clearest facets of the doctrine of sovereign immunity is that '[a] proceeding against property in which the United States has an interest is a suit against the United States,' and we think it matters not that its interest is equitable rather than legal in nature." 136 U.S.App.D.C. at 10, 419 F.2d at 312 (footnotes omitted), *citing Minnesota v. United States,* 305 U.S. 382 at 386, 59 S.Ct. 292, 83 L.Ed. 235 (1939).

certain. *Cf. Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977) (declining on the facts to infer direct Fourteenth Amendment cause of action). *See Davis v. Passman,* 571 F.2d 793 (5th Cir. 1978). Finally, even if the complaint against Rosenthal stated a cognizable constitutional claim against him, he would be protected by qualified immunity. *See Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The allegations in the complaint are insufficient to overcome the hurdle of immunity.

*The Section 1981 Claim*

■ Section 1981 does not constitute a waiver of sovereign immunity. *Penn v. Schlesinger,* 490 F.2d 700 at 703 (1973), *reversed on other grounds,* 497 F.2d 970 (5th Cir. 1974) (en banc), *cert. denied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). The same considerations, therefore, which require dismissal of plaintiff's Fifth Amendment claim against the defendants require dismissal of the Section 1981 claim.

*Conclusion*

In sum, the Court finds that this action must be dismissed. The ADEA did not apply to the Smithsonian at the time of the alleged discriminatory dismissal; if it did, plaintiff did not comply with the procedural conditions precedent to suit. Plaintiff's Fifth Amendment and Section 1981 claims against all the defendants are barred by sovereign immunity. Additionally, the claims against defendant Rosenthal are not cognizable, are overly broad and conclusory, are defeated by uncontroverted affidavit, and are insufficient to overcome Rosenthal's qualified immunity.

For the foregoing reasons, along with others supported by the record, the Court grants the defendants' alternative motion, treated as a motion for summary judgment.