**UNITED STATES of America**

v.

**William T. HARRIS, Jane B. Harris and Pioneer Bank & Trust Company.**

**Civ. A. No. 10692.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Jan. 14, 1966.

Edward L. Shaheen, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty., Shreveport, La., for the Government.

J. W. Jones, Bodenheimer, Looney & Jones, Shreveport, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

This action is brought by the United States to foreclose a tax lien, assessed upon the property of William T. Harris and Jane B. Harris pursuant to Section 6321 of the Internal Revenue Code of 1954, under the provisions of Sections 7402 and 7403 of the Code. The Court has jurisdiction under those provisions and under 28 U.S.C. § 1340. The property sought to be subjected to foreclosure proceedings is presently in the possession of the defendant Pioneer Bank & Trust Company, being two individual checking accounts standing in the names of the taxpayers in the aggregate sum of $760.17.

The District Director of Internal Revenue assessed against the defendant taxpayers, for income taxes in the taxable year 1962, the sum of $4,844.69, on May 17, 1963. On August 23, 1963, a notice of tax lien was filed in the manner prescribed by Section 6323 of the Code. On November 29, 1963, the defendant Pioneer Bank received a Notice of Levy upon the property of the taxpayers. Immediately after the receipt of notice the Pioneer Bank sought to enforce a set-off agreement, arising out of a prior indebtedness of the taxpayers to the bank, by charging both accounts with the entire sums on deposit and applying the aggregate to the taxpayers' debt. The Pioneer Bank has continued to refuse to discharge the tax liability of William T. and Jane B. Harris.[1]

Both the government and the bank have moved for summary judgment on the stipulated facts, the only issue being one of priority between the tax lien and the privilege accorded the bank. We agree with the position taken by the bank, and therefore grant its motion, rejecting the government's demand.

Prior to the tax assessment of May 17, 1963, the taxpayers were indebted to the bank in the original principal sum of $2,061.67 under a promissory note executed by William T. Harris, dated January 29, 1963, held by the bank as holder in due course. The note provided that the holder had the right at any time to set-off any amount that either the maker, endorser, or guarantor had on deposit with the bank, whether such deposit was special or general, and whether the note was then due or not. As a security for their indebtedness, the taxpayers executed certain collateral pledge agreements which provided that should any indebtedness secured by the agreement become due or declared due, in accordance with the terms thereof, any and all funds deposited to the credit of either or both of the taxpayers but in the possession of the bank may be applied in reduction of the secured debt.

The government argues vaguely that because the bank did not exercise its right of set-off until after it had actual notice of the tax lien, that its claim to the funds is inferior to that of the government. In support of its position it cites Bank of Nevada v. United States, 251 F.2d 820 (9 Cir. 1958), cert. denied 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813, and United States v. Bank of America National Trust & Savings Ass'n, 229 F.Supp. 906 (S.D.Calif.1964), aff'd 345 F.2d 624 (9 Cir. 1965).

In Bank of Nevada the taxpayer, prior to the assessment, submitted a financial statement to the bank under which it was stipulated that if the taxpayer thereafter became indebted to the bank, the latter, upon receipt of legal process on the debtors' bank account, had the option to declare immediately due all of his obligations to the bank. It was subsequent to the assessment, however, when the taxpayer became indebted to the bank. Upon notice of the federal tax lien the bank exercised its right to set-off

---

1. After the defendants William T. Harris and Jane B. Harris were duly served and cited and failed to plead or otherwise defend, judgment in favor of the United States in the principal sum of $1,986.06, plus interest and costs, was rendered and signed October 11, 1965, against those defendants *in solido*.

under the prior agreement and applied the funds in the taxpayer's account to his unsecured indebtedness. In affirming the lower court's finding in favor of the government, the Court stated:

" * * * The appellant [bank] could not protect itself from a Federal tax levy by the taxpayer's inchoate agreement, or by an asserted right of setoff arising from a debt that was not in existence at the time the tax liens arose * * *." 251 F.2d at 825.

In Bank of America National Trust and Savings Association the issue was more tightly framed. There the bank claimed under a statutory right of set-off or compensation under California Code of Civil Procedure, § 440. Nevertheless, the court found the Bank of Nevada case controlling. Significantly, the taxpayer's obligation to the bank arose subsequent to attachment of the Federal tax lien under § 6321:

" * * * in the Bank of Nevada case, the court went on to point out the Government's claim arose before any right under the instruments held by the bank. The same is true in the present case." 229 F.Supp. at 909.

Thus, as urged by counsel for Pioneer Bank, both of the decisions on which the government relies are distinguishable from the situation here presented, in that the Harrises stipulated with the bank as to the bank's right to set-off funds on deposit to the taxpayers' credit against a debt existing *prior* to the assessment and Notice of Levy.

But it is unnecessary for us to base our decision on such a distinction; there is a firm ground which is clearly dispositive of this case. It is well settled that as for a lien created by State law, its priority depends upon "the time it attached to the property in question and became choate." United States v. City of New Britain, 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); United States v. Security Trust & Sav. Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed.

53 (1950). The rule is now cliche: "first in time, first in right." United States v. City of New Britain, supra. See also United States v. Crest Finance Co., 291 F.2d 1 (7 Cir. 1961), rev'd 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 342. Although the word "choate" has fallen into some disrepute, it being suggested that the word "complete" be used, see e. g., Hammes v. Tucson Newspapers, Inc., 324 F.2d 101 (9 Cir. 1963), the federal rule is that liens are "perfected in the sense that there is nothing more to be done to have a choate lien—when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963). And it is a matter of federal law when such a lien has acquired sufficient substance and has become so perfected as to defeat a later-arising federal tax lien. United States v. Security Trust & Sav. Bank, supra.

It is crucial, therefore, to determine when a State created right of preference came into existence or becomes valid under federal law, when a question of priority vis-a-vis a federal tax lien is presented. The tax lien arises, according to § 6322, when the tax is assessed, but as against the specific interests mentioned in § 6323(a)—mortgagees, pledgees, purchasers and judgment creditors—it is not valid until placed of public record. Thus it is obvious that if, as a matter of federal law, the Pioneer Bank be accorded a preference (lien) of sufficient substance under the rigorous "choateness" test above, its claim to the funds here in dispute will be superior to the federal tax lien.

As fully conceded by the government, the Pioneer Bank is a pledgee of credits represented by the taxpayers' bank deposits under a collateral pledge agreement executed prior to the tax assessment. We are taught by the Regulations, § 301.6323–1(a) (2) (ii) that:

"The determination whether a person is a * * * pledgee * * * [under Federal law], shall

be made by reference to the realities and the facts in a given case rather than to the technical form or terminology used to designate such person * * *."

We interpret this Regulation to mean that the Pioneer Bank may be a pledgee with a perfected lien right, in the sense that nothing more need be done to have a choate lien, by reference to the realities of the situation here presented.

A pledge is a contract by which a debtor delivers to his creditor a thing to serve as security. The reality of the contract lies in its purpose—security for a debt. The thing delivered, as we are taught by the Louisiana Civil Code, may be any corporeal movable, even money.[2] When money is the object of a pledge it is a real security quite different from the personal security resulting from the engagement of a surety. The contract differs even from the veritable pledge in that the creditor secured is debtor of a sum of money, and not the possessor of the thing of another.[3]

This is precisely the reality of the case before us. The Pioneer Bank is the debtor of the taxpayers under their deposit agreement. The bank becomes the creditor under a loan, evidenced by the negotiable note executed by Harris, and thus is a secured pledgee, however not possessing a thing such as the watch held by the pawnbroker but rather by being debtor of the sum of money on deposit. These agreements are preserved in a document called a collateral pledge agreement.

Further, if these bank deposits be considered credits rather than specific currency, the reality of the pledge is even more manifest. It is axiomatic that every sort of assignable credit may be

given in pledge.[4] The Louisiana Civil Code teaches that when the thing given in pledge consists of a credit, "the pledge shall be complete as to all the world," as soon as the person obligated on the credit is notified in writing.[5] The typical pledge of this type is that of accounts receivable. But we see nothing to prevent the person obligated on the credit from being the pledgee himself, remembering that the reality of the pledge lies in the security it affords the pledgee-creditor. The case before us is clear: in order to obtain a long-term installment loan, otherwise unsecured, the taxpayers pledged the deposits attributable to their checking accounts to secure the creditor bank. It may not be conjecture to suggest that these taxpayers might not have been able to obtain a loan at all without some type of security.

Applying the federal test of "choateness," United States v. Pioneer American Ins. Co., supra, to the realities and the facts of the case before us, we find: (1) *the identity of the lienor* to be the pledgee—the Pioneer Bank; (2) *the property subject to the lien* to be the thing pledged—the individual bank accounts of the taxpayers; and (3) *the amount of the lien* to be ascertainable as the amount of money on deposit, or the value of the credit, not to exceed the amount of the debt. We find it of no consequence that the amount of funds subjected to the lien, and thus, *the amount of the lien*, may vary during the existence of the pledge. The amount is ascertainable at any given time, and thus the lien is perfected as to amount.

We find United States v. Crest Finance 342 (1962) rev'g 291 F.2d 1 (7 Cir. Co., 368 U.S. 347, 82 S.Ct. 384, 7 L.Ed.2d 1961), controlling.[6] In that case Crest

2. See La.Civil Code arts. 3133–3181 (1870). See generally Slovenko, Of Pledge, 33 Tulane Law Review 59 (1958).

3. See 2 Planiol, Civil Law Treatise (An English Translation by the Louisiana State Law Institute) No. 2391 (1959).

4. See e. g., 2 Planiol, Civil Law Treatise (An English Translation by the Louisiana State Law Institute) No. 2392 (1959).

5. La.Civil Code art. 3160 (1870).

6. Remanded 302 F.2d 568 (7 Cir. 1962); on remand 305 F.2d 332. For a detailed

Finance Company claimed a lien resulting from a pledge of the taxpayer's accounts receivable. In the Court of Appeals the government was successful in its contention that the lien was unperfected in that there had been no transfer of possession of the pledged things. The Supreme Court reversed, and on remand, see 302 F.2d 568 (7 Cir. 1962), the Court held that "the lien of Crest was perfected under the law of Illinois and was superior to the subsequent lien of the United States." 302 F.2d at 570, in that the State law did not require for perfection of the lien transfer of "the pieces of paper representing the accounts." See also Stevan v. Union Trust Co., 115 U.S.App. D.C. 36, 316 F.2d 687 (1963); United States v. Peoples Bank, 197 F.2d 898 (5 Cir. 1952); United States v. Winnett, 165 F.2d 149 (9 Cir. 1947). See generally 9 Mertens, Law of Federal Income Taxation § 54.42.

By contrast, in United States v. Pioneer American Ins. Co., 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963), federal tax liens filed subsequent to a mortgage were entitled to priority over the claim of the mortgagee for a "reasonable attorney's fee" because the lien for an attorney's fee was uncertain in amount: "such a lien is inchoate and is subordinate to the intervening federal tax lien filed before the mortgagee's lien for the attorney's fee matures." 374 U. S. at 91, 83 S.Ct. at 1657.

Indeed, it is difficult to conceive of a more "choate" or perfected lien than that accorded a pledgee upon the object of the pledge. In our view the pledge is the epitome of the lawful causes of preference whereby a subsequently attaching federal tax lien is subordinated to the claim of the pledgee in the thing pledged. For the reasons above we hold that the lien of the Pioneer Bank was perfected under the Internal Revenue Code and within the rationale of the jurisprudence and was superior to the subsequent tax lien of the United States.

discussion of priority accorded pledgees vis-a-vis the United States under a tax

The motion of the United States for summary judgment is denied; the motion of Pioneer Bank is granted. An appropriate decree should be presented.

lien, see 9 Mertens, Law of Federal Income Taxation § 54.44.