UNITED STATES of America,
Plaintiff,

v.

Nelson T. BARKER, d/b/a Walker Branch
Coal Company, Defendant and Third
Party Plaintiff,

v.

Claude C. NICHOLS, and Ruby Hagy,
Third Party Defendants.

Civ. A. No. 68–C–115–A.

United States District Court,
W. D. Virginia,
Abingdon Division.

Jan. 28, 1970.

Robert S. Irons, Asst. U. S. Atty., Roanoke, Va., for the United States.

D. H. Frackelton, Widener & Frackelton, Bristol, Va., for Nelson T. Barker.

George C. Sutherland, Grundy, Va., for Claude C. Nichols.

Pat B. Hale, Grundy, Va., for Ruby Hagy.

## SUMMARY JUDGMENT

DALTON, Chief Judge.

This action was instituted to recover judgment under Section 6332(c), Internal Revenue Code of 1954, against the defendant Barker for failure to surrender property subject to levy upon the demand of a delegate of the Secretary of the Treasury. Plaintiff asks that summary judgment be entered against the defendant Barker pursuant to Rule 56, Federal Rules of Civil Procedure.

The underlying facts upon which the court relies and which are not in dispute are conclusive as a matter of law against the defendant Barker.

Barker, d/b/a Walker Branch Coal Co., leased, among others, mine # 25 from Cambridge Smokeless Coal Co. (hereafter referred to as Cambridge Smokeless) and subleased this mine to the taxpayer, Claude C. Nichols, d/b/a Nichols Coal Co. The terms of the sublease were not in writing. Barker's lease of mine # 25 from Cambridge Smokeless and his sublease to Nichols provided that all coal obtained from this mine would be delivered to the tipple of Cambridge Smokeless. Barker's lease provided that he would receive from Cambridge Smokeless $3.85 for each ton of clean coal delivered from mine # 25; his sublease with Nichols Coal Co. provided that Barker would pay Nichols $3.50 per ton of clean coal delivered to the tipple. Payments were made to Barker by Cambridge Smokeless a few days after the first and fifteenth of each month for coal delivered by Barker's sublessees to the tipple during the previous half month. After making certain deductions, Barker promptly paid Nichols and other sublessees at the agreed rate.

One deduction Barker was authorized to make against Nichols from the agreed rate of $3.50 per ton related to a conditional sales contract between the two. Nichols financed the purchase of certain equipment used by him in connection with his coal mining operation by entering into this conditional sales contract. The conditional sales contract provided that Nichols would pay Barker $100 every half month, and this would be deducted from the bi-monthly checks from Barker to Nichols.

On November 16, 1965, the District Director of Internal Revenue made an assessment against Nichols for withholding taxes covering the third quarter of 1965, a penalty, and interest in the total sum of $1,982.97. The District Director gave Nichols notice of this assessment. There is still due and owing to the United States by Nichols by virtue of this assessment the sum of $1,573.54 plus statutory interest, which on May 13, 1969, totaled $344.54, and interest accrued thereafter at the rate of $0.25 per day.

On November 30, 1965, the District Director of Internal Revenue served a notice of levy pursuant to Sec. 6331(a), Internal Revenue Code of 1954, on defendant Barker in the sum of $1,994.36. Between November 16 and November 30, 1965, Nichols had delivered 812.22 tons of coal to the tipple and under his oral contract with Barker was entitled to receive $2,842.77 from Barker. On, or about December 5, 1965, a fire in mine # 25 destroyed all, or almost all, of Nichols' mining equipment. On December 7, 1965, a check was delivered to Nichols for $379.10 which Barker states was due after certain deductions from the $2,842.77 (a $2.00 addition was made for state taxes). The check stub shows the following deductions: $271.31 for "stores", $100.00 due by Nichols to Southwest Tire, $100.00 as payment under the aforementioned conditional sales contract, and $1,994.36 (the exact amount of the levy) for "equipment".

■ Barker asserts two defenses to this action. The first is that Barker held no property subject to levy on November 30, 1965. Barker did not receive payment on the account until sometime after December 1, 1965. It is asserted that "[s]ince Barker did not have in his possession any property subject to levy on November 30, 1965 then even his payment to Nichols for that sum over and above the remaining amount due on the conditional sales contract cannot be criticized." Sec. 6332(a), the Internal Revenue Code of 1954, states that a levy can be made on "any person in possession of (or obligated with respect to) property or rights to property". Barker had the contractual right to receive from Cambridge Smokeless $3.85 per ton of coal for all coal delivered by Nichols to the tipple. Barker had the additional contractual right to pay over to Nichols $3.50 per ton less certain deductions. Under Sec. 6332(a), a levy can be made on intangible as well as tangible property. United States v. Sullivan, 333 F. 2d 100 (3rd Cir. 1964); United States v. Eiland, 223 F.2d 118 (4th Cir. 1955). Barker's contractual right to receive payment for the coal delivered the second half of November, 1965, is a "right to property" and falls within the meaning of Sec. 6332(a).

■ Secondly, Barker asserts that he has a right of set-off which is superior to the government's tax levy. The factual situation of this case and Bank of Nevada v. United States, 251 F.2d 820 (9th Cir. 1957), are analogous. In *Bank of Nevada* the taxpayer and his wife borrowed $2,000 from appellant and executed a promissory note in favor of the appellant. On June 10, 1955, the taxpayer had $878.16 on deposit with the appellant and on that day notice of levy was served on the appellant. After the notice of levy was served, the appellant attempted to exercise its right to set-off. The court stated, "No strained theories of setoff, relation back, or the like can frustrate the sovereign from collecting its taxes in this case." 251 F.2d at 828. In the present case, Nichols was not in default on the conditional sales contract on November 30, 1965. If Barker ever obtained a right to set-off, it was not until after the notice of levy had been served upon him. Therefore, as in *Bank of Nevada*, the attempted set-off came after the notice of levy and is ineffective. See also, United States v. Bank of America National Trust & S. Ass'n, 229 F.Supp. 906 (D.C., 1964), affirmed, 345 F.2d 624 (9 Cir., 1965).

It is asserted that the case of United States v. Harris, 249 F.Supp. 221 (1966), controls this factual situation. In *Harris* prior to the tax assessment of May 17,

1963, the taxpayers were indebted to the bank for $2,061.67 under a promissory note dated January 19, 1963. The note provided that at any time the holder had the right to set-off any amount on deposit (whether the note was due or not). As security, the taxpayers executed collateral pledge agreements which provided that should any indebtedness secured by the agreement become due or declared due, in accordance with the terms thereof, any and all funds deposited to the credit of either or both of the taxpayers, but in the possession of the bank may be applied in reduction of the secured debt. The court held:

> As fully conceded by the government, the Pioneer Bank is a pledgee of credits represented by the taxpayers' bank deposits under a collateral pledge agreement executed prior to the tax assessment.
>
> \*   \*   \*   \*   \*   \*
>
> Indeed, it is difficult to conceive of a more 'choate' or perfected lien than that accorded a pledgee upon the object of the pledge. In our view the pledge is the epitome of the lawful causes of preference whereby a subsequently attaching federal tax lien is subordinated to the claim of the pledgee in the thing pledged.

249 F.Supp. at 223–225

In the present case, the reservation of title in the equipment under the conditional sales contract was Barker's security. There is absolutely no evidence that the payment to Barker by Smokeless Cambridge was intended as a pledge of the Nichols-Barker debt. No evidence has been introduced to demonstrate that the payment was intended as a pledge under the contracts involved. Because Barker has not alleged any facts which support his last minute claim of a pledge and there are no material facts in issue, judgment is summarily entered against him.

■ Defendant Barker has also filed a third party complaint under Rule 14, Federal Rules of Civil Procedure, against Nichols and Ruby Hagy, who he claims

are partners. Under Sec. 6332, Barker is personally liable to the United States and recovery by the United States is in no way effected by this third party complaint. While summary judgment is entered on the original action, the third party complaint is not "ripe" for judgment at present and is, hereby, retained on the docket for further action.