**UNITED STATES of America,**
**Plaintiff,**

v.

**Vincent J. CUTI, Jr., Defendant.**

**No. 74 C 887.**

United States District Court,
E. D. New York.

June 6, 1975.

David G. Trager, U. S. Atty. by Peter Goldman, Asst. U. S. Atty., Brooklyn, N. Y., William R. Morrow, Jr., Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for plaintiff.

Vincent J. Cuti, Huntington, N. Y., by Vincent J. Cuti, Jr., pro se, for defendant.

MEMORANDUM *AND ORDER*

BRAMWELL, District Judge.

This is a motion by the government for summary judgment. The defendant has interposed a cross-motion for summary judgment. Fed.R.Civ.P. 56. The material facts in the case are not in controversy.

This case involves a dispute regarding the obligations of the defendant, Vincent J. Cuti, an attorney of the State of New York, as escrow agent, resulting from a tax levy affecting his principal, the Bivona Vista Restaurant, Inc.

The government brought this action against Vincent J. Cuti, Jr. after he failed to honor a tax levy imposed by the Internal Revenue Service (I.R.S.) upon moneys held by him which originally came into his possession as escrow agent for Bivona Vista Restaurant, Inc.

Since the chronology of events is crucial to the disposition of the motions before this Court, it is set forth below.

On August 27, 1971, the taxpayer, Bivona Vista Restaurant, Inc., sold the assets of its business, and placed the proceeds of sale, amounting to $4,555.20, in escrow with its attorney, Vincent J. Cuti, Jr.[1]

The government's complaint and supporting affidavit indicate that on October 28, 1971, January 28, 1972, December 18, 1972, and February 2, 1973, a delegate of the Secretary of the Treasury of the United States issued and served upon Mr. Cuti, notices of levy on all property and rights to property in his possession belonging to the taxpayer, on which liens had attached in favor of the United States of America. Such liens included any sums of money held in escrow by the defendant to or for the account of the taxpayer to the extent that such property and rights to property were necessary to satisfy the amounts due from the taxpayer. Final demands were issued and served upon Mr. Cuti on January 28, 1972, July 18, 1972, and October 11, 1973.

In his affidavit in support of his notice of cross-motion the defendant expressly conceded: that he has no standing to and does not challenge either the validity or the amounts of the assessments made against the taxpayer; and that he does not contest or dispute either the validity or the amounts of the levies served upon him, or that the same were valid and accurate.

Section 6332(a) of Title 26 of the United States Code (Internal Revenue Code) provides in pertinent part:

"[A]ny person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary or his delegate, surrender such property or rights (or discharge such obligation) to the Secretary or his delegate except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process."

Section 6332(a) gives the possessor of property upon which a levy has been made only two defenses: first, that such person was not in possession of property which was subject to levy; and second, that the property was subject to prior judicial attachment or execution. The statute provides no other defenses. *See United States* v. *Manufacturer's Trust Co.*, 198 F.2d 366 (2d Cir. 1952); *United States* v. *Third National Bank & Trust Co., Scranton, Pa.*, 111 F.Supp. 152 (D.C.M.D.Pa.1953).

Section 6332(c)(1) provides that when one dishonors a tax levy, he is personally liable to the United States for the value of the property not surrendered, together with costs and interest. At the outset of

---

1. The portion of the contract dealing with the escrow account reads as follows:

"EIGHT: The parties agree to comply with the provisions of the Uniform Commercial Code relative to Sale in Bulk and BIVONA VISTA RESTAURANT, INC., agrees to provide at least FIFTEEN (15) DAYS prior to the closing, a list of its existing business creditors and that all existing taxes pertaining thereto and all creditors shall be paid on or before closing of title. The seller shall provide the buyer with a release as to taxes. A tax credit and escrow shall be held by seller's attorney in the minimum of 5000 to a maximum of 7500 to be determined at closing for a period of 90 days and applied to the payment of the aforesaid."

this action, the amount sued for by the government was $4,555.20, plus interest and costs. The defendant does not dispute the value of the property not surrendered, that is $4,555.20. The government is also seeking to exact a penalty from the defendant pursuant to Section 6332(c)(2) for his failure to turn over the corpus of the escrow account.

▪ The defendant has cross-moved for summary judgment. His supporting papers do not establish that the property which the government seeks to recover was subject to prior judicial attachment or execution. Therefore, that defense is not available to the defendant. The basis upon which the defendant has predicated his refusal to pay over the escrow fund to the government is that the same does not constitute "property or rights to property" of the taxpayer made subject to levy by the provisions of Section 6332 of the United States Code. Defendant contends that where an escrow account may be subject to the claims of other creditors whose claims have not been the object of prior judicial attachment or execution, the property in the excrow account is not the property of the taxpayer. However, the defendant has failed to provide any authority for this proposition. After exhaustive research, the Court has been unable to find any authority for the defendant's argument. One must ask rhetorically then, if Mr. Cuti was not in possession of property or rights to property of the taxpayer, then who was in possession of such property? Who had rights to such property? Clearly, it was not the property of creditors who had not reduced their claims to judgment or who had not levied upon their judgments. Therefore, such moneys in the defendant's possession are payable to the government.

▪ The remaining issue to be confronted by the Court is whether the defendant having dishonored the government's tax levy is liable for a penalty under Section 6332(c)(2). Subsection (c)(2) provides that in addition to the

personal liability imposed by subsection (c)(1):

> [I]f any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property *without reasonable cause,* such person shall be liable for a penalty equal to 50 percent of the amount recoverable under [subsection (c)(1)]. No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

26 U.S.C. § 6332(c)(2) [emphasis added].

In *United States* v. *Sterling National Bank & Trust Company of New York,* 494 F.2d 919 (2d Cir. 1974), the Second Circuit addressed itself to an interpretation of the term "reasonable cause" as it is used in the subject statute. There the Court emphasized that "[n]o penalty can be imposed if the [defendant] acted with 'reasonable cause' in resisting the levy." 494 F.2d at 923. Further, the Court expressly indicated that it rejected the view that for the purposes of this statute "reasonable cause" could not as a matter of law be an adherence to "a non-frivolous, but erroneous, argument of law . . . ." Moreover, the Court set forth the principle that a holder of property which is levied upon has "reasonable cause" to resist the levy if he is presented with an unsettled question of law concerning the rights and obligations with respect to such property held:

> "The question here is whether we should penalize the [defendant] for forcing the government to litigate an unsettled question of law. There is no reason to believe that Congress would wish to penalize the holder of the property levied upon for litigating a test case. Nor do we believe that failing to impose the 50% penalty in situations like this will detract from the congressional purpose of requiring compliance with tax liens." Id. at 923.

Applying the *Sterling* standard to the facts of this case, we find that the de-

fendant, Mr. Cuti, was a mere stakeholder who was ready, willing and able to disburse the funds in his possession in accordance with the Order of a Court of competent jurisdiction. He engaged in a continuous dialogue and course of correspondence with the I.R.S. in an attempt to comply with the statutory requirements of the Internal Revenue Code. He continuously indicated to the I.R.S. that he was only trying to insulate himself from potential liability to adverse claimants to the funds he held in escrow. Defendant correctly asserted that under the circumstances of this case he is afforded no statutory protection from liability to beneficiaries of the escrow fund.

Mr. Cuti made every effort to cooperate with the government to the extent that he agreed to assume the role of a Court of competent jurisdiction and make the determination as to priority of liens, if the government would agree to authorize deduction of the cost of a search for the liens of record from the escrow fund. This offer the government declined.

Thus, the issue before this Court has ultimately narrowed to this: who bears the burden of making and paying for a search for the liens of record in the circumstances presented? Neither of the parties has set forth authority for their contentions that the burden of search and payment for such search rests upon the other. The Court is aware of *American Honda Motor Co., Inc.* v. *United States*, 363 F.Supp. 988 (S.D.N.Y.1973), where in dictum the burden was placed upon the possessor of taxpayer's property. However, *Honda, supra*, is factually dissimilar from the instant case. Moreover, in that case, no authority is cited for that view.

The test for reasonable cause set forth in *Sterling, supra*, is whether or not a unsettled question of law exists. This Court finds that the question of whether the government or the attorney—escrow agent bears the burden of making and paying for a search for the liens of record in the circumstances presented is such an unsettled question. The dictum in *Honda, supra*, does not lead this Court to a contrary conclusion. Therefore, the demand for the 50% statutory penalty is denied.

Accordingly, partial summary judgment is granted to the government to the extent that Mr. Cuti is directed to pay over the corpus of the escrow account, $4,555.20 to the government, plus interest; and partial summary judgment is granted to Mr. Cuti to the extent that he is held not liable to the United States for the 50% statutory penalty.

So ordered.