**UNITED STATES of America, Plaintiff,**

v.

**Dorothy P. AUGSPURGER, Executrix of the Will of Charles H. Augspurger, and Loeb, Rhoades & Co., Defendants.**

**Civ. 76–595.**

United States District Court, W. D. New York.

March 20, 1978.

Steven Z. Kaplan, Tax Div., Dept. of Justice, Washington, D. C., and Kenneth A. Cohen, Asst. U. S. Atty., Buffalo, N. Y., for plaintiff United States.

Leland G. Cook, Jaeckle, Fleischmann & Mugel, Buffalo, N. Y., for defendant Augspurger.

Harry P. Trueheart III, of Nixon, Hargrave, Devans & Doyle, Rochester, N. Y., for defendant Loeb, Rhoades & Co.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

The United States of America ("the Government") instituted this suit pursuant to 26 U.S.C. § 7405 to collect an erroneous refund of federal taxes.[1] Jurisdiction exists under 26 U.S.C. § 7402 and 28 U.S.C. §§ 1340 and 1345. There are several motions before me for decision: plaintiff's motion for summary judgment against defendant Augspurger; plaintiff's motion for summary judgment on its "counterclaim in reply" against defendant Loeb, Rhoades & Co. ("Loeb"); defendant Augspurger's motions for partial dismissal and for partial summary judgment; defendant Loeb's motions for summary judgment on its counterclaim and cross-claim for interpleader, for discharge and for dismissal of the complaint and cross-claim; and defendant Augspurger's motion for a trial by jury.

*Plaintiff's Motion for Summary Judgment Against Defendant Augspurger and Defendant Augspurger's Motions for Partial Summary Judgment and Partial Dismissal*

The Government argues that it is entitled to a judgment declaring the monies received by Charles H. Augspurger from the Internal Revenue Service to be an erroneous refund and that it is entitled to have a constructive trust imposed upon the proceeds of the refund which were invested with Loeb. Defendant Augspurger (the personal representative of Charles H. Augspurger, now deceased) claims that there are material questions of fact which preclude the court from rendering a decision declaring the refund to be erroneous. She argues, in the alternative, that Fed.R.Civ.P. rule 56(f) is applicable, and that a continuance or denial of the motion is warranted in this situation. She has also moved to dismiss the portion of the complaint requesting the imposition of a constructive trust. In addition, she has moved for judgment on the pleadings pursuant to Fed.R.Civ.P. rule 12(c) with respect to her counterclaim, which asks the court to declare the assessment made on Charles H. Augspurger on February 22, 1971 to be invalid, to declare the liens and levies imposed as a result of the assessment to be invalid and to enjoin the Government from any further attempts to collect monies pursuant to such assessment, liens and levies.[2]

---

1. Although the refund to Charles H. Augspurger was based on a penalty assessment, 26 U.S.C. § 6659(a)(2) states that any reference to "tax" shall be deemed to encompass a penalty.

2. Defendant Augspurger originally asked for judgment in the amount of $6,730.86. This amount represents the dividends that accrued on Charles H. Augspurger's investment with Loeb and that were paid over to the Internal Revenue Service pursuant to the levies served

Before proceeding to the merits, there are some preliminary matters that must be disposed of. The Government applied for leave to file supplemental affidavits and records. The records comprise certificates of assessment and purport to show all the outstanding tax liabilities of Charles H. Augspurger. All the certificates of assessment were completed May 23, 1977. The Government is granted leave to file the affidavits and accompanying documents, but they will be considered only for the limited purpose of showing payments credited to decedent's account with relation to the February 22, 1971 penalty assessment. Defendant Augspurger has offered the affidavit of Leland C. Cook, her attorney, in support of her motions. His affidavit does not meet the requirements set forth in Fed. R.Civ.P. rule 56(e) and has been treated as if it were a brief. Defendant Augspurger's motion concerning the constructive trust was made pursuant to Fed.R.Civ.P. rule 12(c); it will be treated as a motion for summary judgment.

*Defendant Augspurger's Rule 56(f) Motion*

 Rule 56(f) of the Federal Rules of Civil Procedure permits a district court judge to either deny a motion for summary judgment or order a continuance of the motion, when it appears from the affidavits of the party opposing the motion "that [she] cannot for reasons stated present by affidavit facts essential to justify [her] opposition." Although Mrs. Augspurger's affidavit does not state that it is offered in support of her Fed.R.Civ.P. rule 56(f) motion, her memorandum of law shows that this issue is one of her primary arguments against the Government's summary judgment motion. In the affidavit (sworn to December 31, 1976) she states that she has "no knowledge * * * which would indicate whether or not" the Government's allegation that the check received by her husband was an erroneous refund "is true." The application of rule 56(f) is warranted

where the knowledge of the facts in issue is in the exclusive control of the moving party. However, it is not enough merely to assert that the moving party has exclusive knowledge or control of the facts. "The opposing party must show to the best of [her] ability what facts are within the movant's exclusive knowledge or control; what steps have been taken to obtain the desired information pursuant to the discovery procedures under the Rules; and that [she] is desirous of taking advantage of these discovery procedures." 6 Moore's Fed.Pract., ¶ 56–24. *See, also, United States v. Donlon,* 355 F.Supp. 220 (D.Del.1973), *aff'd* 487 F.2d 1395 (3d Cir. 1973). Defendant Augspurger has failed to elaborate on what information is within the exclusive control of the Government, which has furnished the court with extensive records concerning the penalty assessment against Charles H. Augspurger. His representative does not state what additional information is missing or what information within the Government's control would support her opposition to the motions. She has not made any attempt to obtain discovery from the Government.

In one of her memoranda it is stated that her opposition to summary judgment is based on her ignorance of the facts surrounding the February 22, 1971 penalty assessment and the financial affairs of the corporation with which her deceased husband was associated. The Government has provided numerous documents with respect to the penalty assessment showing the facts that led it to the conclusion that the refund was erroneously made and defendant Augspurger .has access to the financial affairs of the H. R. Weissberg Corp. (the said corporation) which is equal to, if not greater than, the Government's. She does not contest the fact that a penalty assessment was made, but merely argues that she has no knowledge whether or not the refund was erroneous. It is the corporation[3] that has control over the facts concerning its pay-

on Loeb. Defendant Augspurger later requested $856.58, the amount turned over to the Internal Revenue Service as a result of the first levy.

3. The H. R. Weissberg Corporation was put into the hands of a receiver, a Mr. Patton, December 19, 1967. He was discharged April 15, 1968.

ment of the withholding taxes and the facts concerning any payment that might have been made on behalf of Mr. Augspurger.[4] In addition, defendant Augspurger has control over the records of her late husband and has not attempted to supply the court with any information such as a cancelled check, which would show a complete or partial payment made by Charles H. Augspurger.[5]

Defendant Augspurger's motion for a continuance is denied. Denial of plaintiff's motion for summary judgment on the basis of Fed.R.Civ.P. rule 56(f) is not warranted in this case.

*Plaintiff's Motion for Summary Judgment on the Issue of the Erroneous Refund*

■ Summary judgment is a drastic device that should only be granted when there is no genuine issue as to any material fact. *Gladstone v. Fireman's Fund Insurance Co.*, 536 F.2d 1403, 1406 (2d Cir. 1976). The court is to determine whether or not there are issues to be tried and is not to resolve any disputed issues of fact. *American Manufacturers Mutual Insurance Co. v. American Broadcasting Paramount Theatres, Inc.*, 388 F.2d 272 (2d Cir. 1967). In deciding a motion for summary judgment, a court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought * * * with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." *Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975); *Judge v. City of Buffalo*, 524 F.2d 1321 (2d Cir. 1975).

Most of the facts are undisputed. Defendant Augspurger, in her answer, denied the Government's allegations that the check was a tax refund check and that the refund was erroneous. The face of the check shows that it is a tax refund check; therefore, that issue cannot be said to be genuinely in dispute. The issue whether or not the refund was erroneous is a conclusion of law, not fact. Defendant Augspurger also disputes the Government's assertion that the penalty assessment has not been abated. This question is genuinely in dispute but is not material to a decision in this case.

1. *Findings of Fact*

My findings are based on the affidavits submitted by the parties and the documents submitted by the Government. (Defendant Augspurger submitted several of the Government's documents in support of her motion.)

On February 22, 1971 the Internal Revenue Service ("the IRS") made a one hundred (100) percent penalty assessment against Charles H. Augspurger as the responsible person for H. R. Weissberg Corp., pursuant to 26 U.S.C. § 6672. The amount assessed against Mr. Augspurger was $210,092.62. On December 17, 1971 two additional penalty assessments were made against Mr. Augspurger as the responsible person for the Paramount Hotel ($13,390.17) and for the Lord Baltimore Hotel ($28,383.82). A lien covering the December 17, 1971 assessments was filed in the Erie County Clerk's Office on January 21, 1974.[6]

**4.** At one point defendant Augspurger claimed that the penalty assessment had been paid, citing the Request for Adjustment form filled out by the Manhattan District Revenue officer. The only reference to payment of taxes is to the withholding taxes owed by the H. R. Weissberg Corp. This statement is based on hearsay set forth by Mr. Augspurger in his May 29, 1974 claim requesting an abatement of the penalty.

**5.** The statement attached to the claim filled out by Mr. Augspurger negates any inference that he paid the penalty assessment. In paragraph seven of his statement to the Internal Revenue Service, Mr. Augspurger states that he did not

know of the penalty assessment until the summer of 1971. He outlines several reasons why the penalty assessment should be abated, but does not indicate that he ever made a complete or partial payment of the assessment.

**6.** The records of the IRS and the statement made by Mr. Augspurger indicate that a lien was filed in the Spring of 1971 (the date in the IRS records is June 8, 1971; the date in Mr. Augspurger's statement is May, 1971) based on the February 22, 1971 penalty assessment. The IRS did not furnish a copy of the request for a lien filed with the Erie County Clerk's Office; therefore, I make no finding concerning this issue.

Mr. Augspurger filed a Request for Abatement (Claim form 843) dated May 29, 1974 with respect to the February 22, 1971 penalty assessment. The claim sets forth Mr. Augspurger's reasons for believing that a penalty assessment should not have been made against him. The request for abatement was forwarded to the Manhattan District Revenue office, where a revenue officer filled out a Request for Adjustment, Form 3870, dated January 7, 1976 in which he recommended an abatement of the 100% penalty.[7] The latter form was received by the Brookhaven Service Center January 27, 1976. It came to the attention of a tax examiner February 4, 1976 who began to process it February 19, 1976. The penalty assessment account card (the "Unit Ledger Card") has a credit entry for July 12, 1974. The date is followed by a TR symbol which indicates either a transfer of the account from one service center to another or a credit to the account resulting from an overpayment of other tax liabilities. In this case, the entry referred to a transfer of the account to the Brookhaven Service Center from the Andover Service Center. The examiner incorrectly interpreted the credit entry as a direct payment by the taxpayer and proceeded to fill out a Notice of Adjustment Certificate and indicated thereon that a refund was due to Mr. Augspurger. This form was certified by the certifying officer of the Accounting Branch March 5, 1976. On that date, a voucher and schedule of payments, Standard Form 1166–A, was prepared and forwarded to the Birming-ham, Alabama office of the Division of Disbursements of the United States Treasury. This form indicated that a check in the amount of $235,826.94 (penalty amount plus interest) should be issued to Charles H. Augspurger. The Alabama office sent back a "confirmed" copy of Form 1166–A that indicated the check had issued. The check was received by Mr. Augspurger and was subsequently endorsed to Loeb, who then purchased $235,000.00 worth of shares in Temporary Investment Fund, Inc. for Mr. Augspurger.[8]

Charles H. Augspurger's penalty assessment account came to the attention of Patricia Korth, A Supervisory Tax Examiner, March 23, 1976. After reviewing the account Korth determined that an erroneous refund had been issued. She discussed the problem with her supervisor and they decided that the best course of action would be to contact Mr. Augspurger by telephone. At 4:45 p. m. on March 23, 1976 Korth telephoned Mr. Augspurger and told him that the IRS had erroneously issued a refund check to him.[9] A letter was sent to Mr. Augspurger on April 9, 1976. Korth requested the initiation of erroneous refund procedures. Before Korth had determined that an erroneous refund had been issued, the Notice of Adjustment, Form 1331B, had been forwarded to the Accounting Branch and the adjustment had been scheduled as of March 5, 1976.[10]

No direct payments—i. e., a payment by the taxpayer—had been made on the penalty assessment account at the time of Mr.

---

7. The revenue officer's statement lists several reasons for his recommendation: the assessment was hurriedly made without time for investigation; the withholding taxes were reported to have been paid; and the assessment was made "without the usual letters to the responsible parties."

8. In her answer, defendant Augspurger denied that Charles H. Augspurger endorsed the revenue check to Loeb, but in her memo she states that it is undisputed that Charles H. Augspurger made his investment with Loeb, with the funds he received from the Treasury Department.

9. A photographic copy of the check shows that it was a tax refund check.

According to Korth, the telephone call was followed by a letter, Form 4728, which requested the return of the $235,826.94. She stated that the letter was typed and mailed March 24, 1976. Defendant Augspurger denies that such a letter was sent. The IRS did not furnish a copy of the letter to the court; therefore, I do not make a finding on this issue.

10. There is no indication in the papers as to what effect "scheduling" an adjustment has. Defendant Augspurger maintains that the assessment was abated, while the IRS contends that it was not. The Government has not supplied any information to the court that would allow me to determine the point at which a penalty assessment can be said to be abated.

Augspurger's death (September 21, 1976). However, the Certificate of Assessments and Payments reflects three credits. The first credit dated April 15, 1976 is in the amount of $217.30 and was credited as a result of an overpayment on other tax liabilities. The second and third credits resulted from notices of levy served on Loeb. The second credit for $856.58 was entered in the account June 9, 1976 and the third credit for $845.54 was entered November 15, 1976. The outstanding balance in the account as of May 23, 1977 was $208,983.20.

After the Government became aware that it had issued what it believed to be an erroneous refund to Mr. Augspurger, it served notices of levy on Loeb, based on the penalty assessments it had made in 1971. Notices of levy were served May 3, 1976, June 30, 1976 (two notices were served on this date), July 30, 1976, August 30, 1976, September 29, 1976, November 1, 1976 and December 3, 1976. The May 3rd levy and one of the June 30th levies were solely based on the February 22, 1971 penalty assessment. The others were based on both the February 22nd and the December 17th levies. The Government collected $6,730.86 from Loeb. This amount represents dividends owing to Charles H. Augspurger from his investment with Loeb pursuant to the levies. Only $1,702.12 has been applied to the February 22, 1971 penalty assessment.

### 2. Erroneous Refund

■ Section 7405(b) of Title 26 of the United States Code authorizes actions to be brought in the name of the Government for recoupment of erroneous refunds. In order to prove its case the Government must establish that the refund was erroneous and the amount of the refund. *Soltermann v. United States*, 272 F.2d 387 (9th Cir. 1959); *United States v. Claycraft Company*, 364 F.Supp. 1358 (S.D.Ohio 1972). The Government has met its burden in this case.

■ There is no record of direct payment having been made on the penalty assessment account. Defendant Augspurger argues that the IRS admitted it owed the money to Mr. Augspurger by its forwarding to Mrs. Augspurger of Form 1099, indicating that Mr. Augspurger received interest income of $24,924.32 (the interest on the penalty assessment). This argument is without merit. Mr. Augspurger did receive interest income, whether or not he was entitled to it, and such income is subject to taxation.

The Government's motion for summary judgment on the question of the erroneous refund hereby is granted.

### Defendant Augspurger's Motion for Partial Summary Judgment

Defendant Augspurger alleges in her counterclaim that the assessments made by the Government February 22, 1971 and December 17, 1971 are invalid and that the levies based upon these assessments are invalid. She has moved for a declaratory judgment to that effect and has also asked the court to enjoin the Government from collecting any monies pursuant to these assessments, levies and liens. Defendant Augspurger also asks for judgment in the amount of $6,730.86.

■ The Government asserts that 28 U.S.C. § 2201 (the Declaratory Judgment Act), by its own terms, prohibits this defendant from maintaining a declaratory judgment action. It also argues that 26 U.S.C. § 7421(a) prohibits her from obtaining an injunction. Defendant Augspurger states that the courts have fashioned an exception to 26 U.S.C. § 7421 whereby a taxpayer may obtain an injunction if he shows that the tax is illegal and that special and extraordinary circumstances exist. According to her, if a taxpayer is entitled to an injunction he may also obtain a declaratory judgment. She points to *Botta v. Scanlon*, 288 F.2d 504 (2d Cir. 1961), as supporting her position. Most of the cases cited in *Botta* were cases in which taxpayer B's property was levied upon for a tax owed by taxpayer A. Here, the assessment was against Mr. Augspurger personally. In addition, *Enochs v. Williams Packing Co.*, 370 U.S. 1, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962),

was decided after the first decision was rendered in *Botta*, wherein the Second Circuit Court of Appeals remanded the case to allow the plaintiffs an opportunity to amend their complaint. The district court dismissed the amended complaint and the Court of Appeals subsequently upheld such dismissal, *Botta v. Scanlon*, 314 F.2d 392 (2d Cir. 1963), relying on *Enochs v. Williams Packing Co., supra. Enochs* created a two-pronged test for foregoing the application of 26 U.S.C. § 7421(a). First, the court must decide that even under the most liberal view of the facts, the Government could not establish its claim. If this issue is decided in the taxpayer's favor, the court may issue an injunction if it determines that equity jurisdiction otherwise exists. *See, Enochs, supra,* 370 U.S. at 7, 82 S.Ct. 1125. Equity jurisdiction exists if the taxpayer would suffer irreparable injury and does not have an adequate remedy at law. Defendant Augspurger has not met this burden.[11]

A question of fact exists as to whether or not the penalty assessment was valid when made and, if it was, whether or not it had been abated at the time of the levy. It is not clear from the record before me that the Government could not prevail under any circumstances. *See, Enochs, supra* at 7, 82 S.Ct. 1125. The assessment's validity depends upon the payment of the withholding taxes owed by H. R. Weissberg Corp. There is not enough evidence in the record to make a determination on this issue.

I do not have jurisdiction over defendant Augspurger's counterclaim.[12] *See,* 26 U.S.C. § 7421(a).

*Plaintiff's Motion for Summary Judgment on Its Request for a Constructive Trust and Defendant Augspurger's Motion for Partial Dismissal*

It is undisputed that Charles H. Augspurger invested the monies he received from the Government with defendant Loeb and that Loeb purchased $235,000.00 worth of shares in Temporary Investment Fund, Inc. out of said monies. Nor is it disputed that Mr. Augspurger redeemed $35,000 of those shares. When this suit began, Loeb still held shares in Temporary Investment Fund, Inc. for Mr. Augspurger's account and the Government sought to have a constructive trust imposed upon them. The parties entered into an agreement whereby the shares in Temporary Investment Fund, Inc. were liquidated and the resultant proceeds paid into court. The proceeds were used to buy seven six-month certificates of deposit. When the six months expire, the court's Clerk is to re-purchase sixty-day certificates of deposit until a final decision shall have been rendered in the case. Defendant Augspurger moves to dismiss this part of the complaint for lack of subject matter jurisdiction. She argues that the assets are in the hands of the Erie County (New York) Surrogate and that the Surrogate's jurisdiction cannot be interfered with by a federal district court. She also argues that the anti-injunction statute, 28 U.S.C. § 2283, applies in this case.

The general rule is that, where property is in the possession of a court of competent jurisdiction, such possession cannot be disturbed by the process of another court. *Markham v. Allen,* 326 U.S. 490, 66 S.Ct. 296, 90 L.Ed. 256 (1946); *U. S. v. Bank of New York Co.,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936); *Waterman v. Canal-Louisiana Bank Co.,* 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909); *Byers v. McAuley,* 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867 (1893). A federal court does not have jurisdiction to probate a will, nor can it entertain any suit that would interfere with the possession of the res in a probate court. *United States v.*

---

**11.** She argues that special and extraordinary circumstances exist because they cannot afford to pay the amount claimed by the Government and sue thereafter for a refund. The decision in *Botta* held that financial hardship does not constitute special and extraordinary circumstances. No court has explicitly ruled that financial hardship is not to be considered when determining whether or not a taxpayer has an adequate remedy at law.

**12.** There is no need to rule on her claim that the right to declaratory relief is coterminous with the right to injunctive relief.

*Estate of Slate*, 304 F.Supp. 380 (S.D.Tex. 1969), *aff'd* 425 F.2d 1208 (5th Cir. 1970). Charles H. Augspurger died September 21, 1976 and his will was admitted to probate November 15, 1976. This suit was not commenced until December 15, 1976.

The Government contends that 28 U.S.C. § 2283 does not apply when the United States is the plaintiff. Although this assertion is correct, the general rules of comity do apply even when the United States is the plaintiff. The United States may not obtain an injunction that would interfere with a state court's jurisdiction over a particular res. *See, United States v. Certified Industries, Inc.*, 361 F.2d 857 (2d Cir. 1966). *See, also, N. L. R. B. v. Nash-Finch Company*, 434 F.2d 971 (8th Cir. 1970); *United States v. Farmers State Bank*, 249 F.Supp. 579 (D.S.D.1966). Plaintiff relies heavily upon *Leiter Minerals, Inc. v. United States*, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957), wherein a district court's award of an injunction against a state court proceeding brought against lessees of the United States was upheld. The Court found *U. S. v. Bank of New York Co., supra*, distinguishable because the United States had never been in possession of the res in that suit, whereas in *Leiter* the United States was the owner of the land involved in both the state and federal court actions, and the United States was in a defensive position. Contrary to plaintiff's assertion, the *Leiter* case is not authority for the proposition that the United States can obtain an injunction against a state court proceeding, when the state court has previously obtained jurisdiction over the res that is the subject of the federal court action.

Both parties have overlooked the fact that the United States was in possession of the res that is the subject of this law suit prior to the death of Charles H. Augspurger. A notice of levy constitutes a constructive seizure of the funds held for a taxpayer. *United States v. Cameron Construction Co.*, 246 F.Supp. 869 (S.D. N.Y.1965). Section 2463 of Title 28 of the United States Code states that "[a]ll prop-

erty taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof." Funds affected by levies made pursuant to 26 U.S.C. § 6331 have been "detained" for the purposes of 28 U.S.C. § 2463. *Seattle Association of Credit Men v. United States*, 240 F.2d 906 (9th Cir. 1957). *See, also, N. H. Fire Ins. Co. v. Scanlon*, 362 U.S. 404, 80 S.Ct. 843, 4 L.Ed.2d 826 (1960). The funds in issue in the instant case are subject to the jurisdiction of this court. Defendant's motion to dismiss is denied.

"Constructive trusts arise out of operation of law and are raised to prevent injustice; they depend upon equitable principles, and are imposed in those cases where it would be inequitable to do otherwise." *Knight Newspapers v. Commissioner of Internal Revenue*, 143 F.2d 1007, 1011 (6th Cir. 1944). A constructive trust may arise if there has been a mistake of fact or if there has been a mistake of law. *Blake Construction Co. v. American Vocational Association, Inc.*, 136 U.S.App.D.C. 6, 419 F.2d 308 (1969). A constructive trust may arise whenever a party obtains property which does not belong to him, "and which he cannot in good conscience withhold from another who is beneficially entitled to it." *Blake Construction Co., supra*, 136 U.S.App. D.C. at 9, 419 F.2d at 311. The transferee of the property is treated as a constructive trustee for the person to whom the property rightfully belongs. *Ibid.* The party requesting the imposition of the constructive trust has the burden of identifying the trust fund. *In re Anjopa Paper & Board Manufacturing Co.*, 269 F.Supp. 241, 261 (S.D.N.Y.1967). The Government has sustained its burden.

Its motion to have a constructive trust impressed upon the proceeds of the shares held by Loeb in Temporary Investment Fund, Inc., for Charles H. Augspurger is granted.

Defendant Augspurger's motion for jury trial is hereby denied as moot.

*Defendant Loeb's Motion for Summary Judgment*

■ Loeb moves for summary judgment on its motion for interpleader and discharge. The Government opposes the motion on the grounds that this is not a proper case for interpleader and that the court lacks jurisdiction over the discharge claim.

Interpleader is authorized where a party may be subject to multiple liability. The Government and defendant Augspurger are the only two claimants to the fund, and their rights to the fund will be finally adjudicated in this action; there is no necessity for an interpleader.

■ Even if interpleader were warranted in this situation, discharge would not be. The Government's claim that it is entitled to recover monies from Loeb, pursuant to 26 U.S.C. § 6332(c)(2), is a separate claim and its resolution does not depend upon the Government's success in its action against defendant Augspurger. Loeb is not in the position of a stakeholder with respect to this claim. The liability imposed by 26 U.S.C. § 6332(c)(2) is personal liability.

Defendant Loeb's motion for summary judgment is hereby denied and its counterclaim and cross-claim for interpleader and discharge are hereby dismissed. Defendant Loeb's motion for attorneys' fees is hereby dismissed as moot.

*The Government's Motion for Summary Judgment on its "Counterclaim in Reply".*

■ The Government seeks the imposition of the fifty percent penalty authorized by 26 U.S.C. § 6332(c)(2) on defendant Loeb. Loeb argues that the Government is not entitled to the penalty because Loeb was not in possession of property or the right to property at the time of the levy. Loeb also argues that it did not fail or refuse to comply with the levy without reasonable cause; therefore, a penalty should not be assessed against it.

A levy may be made on intangible as well as tangible property. *United States v. Sullivan*, 333 F.2d 100 (3d Cir. 1963); *United States v. Barker*, 309 F.Supp. 1369 (W.D.Va. 1970). A contractual right to receive property is the equivalent of a right to property. *United States v. Barker, supra.* In the instant case, Charles H. Augspurger had the right to have his shares in Temporary Investment Fund redeemed at any time. His right was not conditioned on the occurrence of a stated event or on the passage of time. Under these circumstances Loeb was in possession of a right to property.

■ Reasonable cause to resist a levy exists when there is "a bona fide dispute over the amount owing to the taxpayer (by the property holder) or over the legal effectiveness of the levy itself * * *." *United States v. Sterling National Bank & T. Co. of N. Y.*, 494 F.2d 919 (2d Cir. 1974). An unsettled question of law concerning the rights and obligations with respect to the property held constitutes reasonable cause. *Id.; United States v. Cuti*, 395 F.Supp. 1064 (E.D.N.Y.1975). Loeb has failed to establish that it acted with reasonable cause.

Loeb has relied heavily upon the *Cuti* case in its memorandum of law. According to Loeb, *Cuti* held that a person is not liable for the penalty imposed by 26 U.S.C. § 6332(c)(2) if he (it) is willing and able to disburse the funds pursuant to an order of a court of competent jurisdiction and if he makes the IRS aware of his willingness to comply with the levy. There is one essential difference between the *Cuti* case and the case at bar; the defendant in *Cuti* was not shielded from liability to the beneficiaries of the escrow fund in his possession by 26 U.S.C. § 6632(d), whereas Loeb is protected by said section.

In its first memoranda of law, Loeb argued that it was unable to redeem the shares it held for Mr. Augspurger. It claimed that this fact was admitted by the Government; however, the Government maintains that such shares were redeemable by Loeb. Loeb's statement that it could not redeem the shares is not supported by facts or by legal authority.

Loeb also argues that the first levy was invalid because the assessment of February 22, 1971 had been abated. Only the May 3, 1976 levy was based solely on the February 22, 1971 penalty assessment. Even if there had been a bona fide dispute as to the validity of that levy, there is no bona fide dispute with respect to the subsequent levies. Although there are disputed questions of fact, none of them is material to the outcome of the litigation; therefore I am not precluded from issuing summary judgment on the plaintiff's "counterclaim in reply." *See, Kiess v. Eason*, 442 F.2d 712 (7th Cir. 1971).

Plaintiff's motion for summary judgment is granted against the defendant Loeb, Rhoades & Co. for the penalty authorized by 26 U.S.C. § 6332(c)(2) in an amount to be separately determined and fixed by me on proper papers. Plaintiff's claim under 6332(c)(1) is now moot and is hereby dismissed.